**UNITED STATES OF AMERICA**
**FOR THE DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO.:

**JAMES BERRY**
    Plaintiff,

v.                                            **COMPLAINT**

**DENIS MCDONOUGH, SECRETARY,**
**DEPARTMENT OF VETERANS AFFAIRS,**
    Defendant.

Plaintiff, James Berry, by and through his attorney, Marc J. Levy, Esquire, respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff, an employee of the Department of Veterans Affairs brings this action in response to the discriminatory actions taken against him by the Department of Veterans Affairs.

2. Plaintiff brings this action pursuant Title VII of the Civil Rights Acts of 1964 ("Title VII").

## THE PARTIES

3. The plaintiff, James Berry ("Plaintiff" or "Berry"), is a resident of Massachusetts who resides at 17 Bolton Street, Worcester, Worcester County, Massachusetts.

4. At all times relevant to this charge, Berry has been an employee of the Department of

Veterans Affairs ("Defendant" or "VA").

5. Defendant VA at all times hereinafter mentioned, was and is an agency within the Federal Government with a facility located at 200 Springs Road, Bedford, Massachusetts. Denis McDonough is the current Secretary of the Department of Veterans Affairs. At all times relevant to this charge, the VA has been Berry's "employer".

## JURISDICTION AND VENUE

6. The Court has original jurisdiction over Plaintiff's federal law claim pursuant to 28 U.S.C. §§ 1331 & 1343.

7. Venue is proper pursuant to 28 U.S.C. § 1391.

8. The jurisdictional prerequisites of 29 C.F.R. Part 1614 have been satisfied. Berry, as required by law, originally filed an ORM/EEO Complaint with the VA's Office of Resolution Management. That Complainant is identified as Agency No. 200H-200H-0518-2019105402; EEOC Case No.: 520-2020-00584X.

9. On December 28, 2021 the VA issued a Final Agency Decision on the Plaintiff's EEOC Complaint.

10. Berry is afforded the right to file a complaint with the United States District Court within 90 days of the Final Agency Decision.

11. Where this Complaint has been filed within 90 days of the Final Agency Decision, the administrative requirements have been met and it is timely.

## FACTS

## THE HOSPITAL

12. The Edith Nourse Rogers Memorial Veterans Hospital in Bedford, Massachusetts (the "Hospital") was founded in 1928 chartered by Congress to provide a variety of health services to Veterans.

13. The Hospital currently offers six service lines including: Ambulatory Care, Mental Health, Geriatrics & Extended Care, Geriatrics Research Education & Clinical Center (GRECC), Clinical Support and Administrative Support.

14. The Hospital also offers Community Based Outpatient Clinics (CBOC's) in Lynn, Haverhill, and Gloucester, Massachusetts.

15. The Hospital has 65 Authorized hospital beds, 345 nursing home beds, 40 domiciliary beds, and 52 PRRTP beds.

## THE HOSPITAL'S NURSING LEADERSHIP TEAM

16. Joan Clifford, DNP, RN, is the current Director of the Hospital. She was appointed Director on March 18, 2018. Ms. Clifford is Caucasian.

17. Below the Director in the nursing leadership team is the Associate Director, Patient Care/Nursing Service. Mary Anderson, RN, MSN, is the current Associate Director, Patient Care/Nursing Service. She was appointed Associate Director in November of 2014. Ms. Anderson is Caucasian.

## JAMES BERRY

18. The Plaintiff, James Berry, is African American. He identifies his color as black/brown.

19. At all times relevant to this matter the Plaintiff has held the position of Registered Nurse

at the at the Edith Nourse Rogers Memorial VA Medical Center in the Home Based Primary Care program.

20. From June 2, 2019 to September 30, 2019 Diane Murphy, RN (Caucasian) was Berry's first line supervisor.  She was named Acting Director of Home Based Primary Care from June 3, 2019 to September 30, 2019.

21. On December 8, 2019 Berry filed a formal EEO/ORM complaint alleging disparate treatment, hostile work environment and retaliation he experienced at the Bedford VA. By way of that Complaint, Berry alleged, among other things, the following:

> **Claim #1: When beginning on August 1, 2019, Complainant has been denied overtime opportunities on a weekly basis.**
>
> **Claim #2: When on August 23, 2019, Complainant's request to telework was denied.**
>
> **Claim # 3: When on January 6, 2020, Complainant learned that he was not selected for the Home Telehealth RN Care Coordinator position he applied for**
>
> **Claim #4: When on January 8, 2020, Complainant learned that he was not selected for the HBPC RN Director position he applied for**
>
> **Claim #5 Hostile Work Environment**

22. Prior to his working at the Bedford VA, Berry worked at the North Hampton VA where he engaged in EEO activity.  That case made its way to a hearing stage at EEOC before Judge Aarika Mack-Brown and was entitled Berry v. VA, EEOC Hearing No. 470-2019-00349X, Agency No. 200H-0631-2018-104424.

23. Telework at the VA is governed by VA Handbook 5011, Part II, Chapter 4.

24. An Employee's official duty station is the location documented on the most recent Standard Form 50 for purposes of determining special salary rates, locality pay adjustments and travel.

25. Alternative Work Site is defined under Handbook 5011, Part II, Chapter 4 as the worksite location where the teleworker works away from the traditional office.

26. The Agency's telework Request/Agreement asks the employee to indicate which type of Telework arrangement he/she is seeking.

27. A Remote Work arrangement is a Telework Arrangement in which the employee is seeking to work in a non-VA-leased space.

28. A Virtual arrangement is a Telework arrangement in which the employee is seeking to work outside the original hiring duty station at VA-owned or leased space.

29. Both Remote Work arrangements and Virtual arrangements constitute alternate workplaces and thus are considered telework under the VA's rules, regulations, contracts, handbooks and forms.

30. Per the Master Agreement between NAGE and the VA telework is defined as:

> Telework – consistent with 5 USC 6501, the term telework or teleworking refers to a work flexibility arrangement under which an employee performs the duties and responsibilities of such employee's position, and other authorized activities, from an approved work site other than the location from which the employee would otherwise work.

31. Any person working telework should have a signed telework agreement.

32. The administrative and paperwork requirements for Home Based Primary care work are typically done at the assigned duty station, which is the Bedford, VA.

33. No Bedford Home Based Primacy Care Nurses were assigned to the Community based Outpatient Clinics or CBOCs.

34. Diane Murphy allowed several Home Based Primacy Care Nurses to go to the CBOC's to perform administrative duties.

35. Diane Murphy did not require telework agreements of those nurses going to the CBOC to perform administrative duties.

36. Berry did not telework out of the CBOC locations.

37. Employees working telework were required to keep telework logs.  Berry was required to keep logs.

38. Murphy places a different documentation requirement Berry working from home than he did on those working at the CBOCs.

39. During the time period at issue in this matter, Chief of Staff Dan Berlowitz authorized 10-15 hours per week of overtime for the Home Based Primary Care Program.

40. Acting Program Director Diane Murphy is the one who came to Berlowitz seeking authorization for overtime.

41. Berlowitz assumed Diane Murphy was going to follow HR guidelines when distributing the overtime he authorize.

42. Diane Murphy gave Berlowitz no indication what her plan was with regard to overtime when she came seeking authorization.

43. Berlowitz trusted Diane Murphy not to mislead him when she came seeking authorization for overtime.

44. Diane Murphy never indicated to Berlowitz that certain employees would not be eligible for overtime when she came seeking authorization for overtime.

45. Diane Murphy never communicated her intention to distribute the overtime she was requesting to just herself, Ken Ahern and Marcia Johansson.

46. After learning that Diane Murphy had been distributing overtime to just herself, Ken Ahern and Marcia Johansson, Berlowitz instructed the Brian Zuzelo, the new Acting Director of the Program, to distribute overtime on a more equitable basis.

47. The hourly rate for a nurse was about $50.00 an hour on average.

48. Under Diane Murphy's leadership and control, Ken Ahern, Caucasian, received overtime on 14 separate occasions in the summer of 2019.

49. Berry received overtime on zero occasions in the summer of 2019.

50. Marcia Johansson, Caucasian, received overtime on five separate occasions in the summer of 2019.

51. Diane Murphy, Caucasian, gave herself overtime on 23 separate occasions in the summer of 2019.

52. When overtime was authorized by Borowitz it was not to compensate Murphy for her duties as Acting Director.

53. The head of the Home Based Primary Care Program before Diane Murphy became an Acting Director of the Program was Michelle Oben.

54. Michelle Oben is African American.

55. Michelle Oben was taken out of the Director's position following complaints brought by staff in the program about her managerial style.

56. At the time she was taken out of the Director's position, Michelle Oben was the only African American Nurse in a management position at the Bedford VA. This was out of a total 16 Nurse Managers under the leadership of Joan Clifford and Mary Anderson.

57. Ms. Oben filed her own claim for racial discrimination stemming from her being taken out of the Director's position and that case was settled by the VA. See Oben v. Wilkie, EEOC No. 520-2020-00350X.

58. Mary Anderson and Joan Clifford, Director, were consulted and involved in the decision to take Michelle Oben out of her Nurse Manager role based on these complaints as to her management style by individuals in the HBPC program.

59. After Michell Oben was taken out of her position as HBPC Director, the VA replaced her on an acting basis with Diane Murphy (Caucasian), Eileen Bachelor (Caucasian), and Brian Zuzelo (Caucasian) before filing the role on a permanent basis with Brandy Sullivan (Caucasian).

60. On or about 8/12/19, Complainant heard Diane Murphy (he shared the same office space at that time) on the telephone speaking about a veteran with a Hispanic last name that was selected by the former program director but not offered a job because of his color/race. Diane stated, "Michelle (previous manager) was trying to drown us out (Caucasian staff) by hiring all of these people off the streets (nurses of color), that have No VA experience. I am not going to colorize this office, I didn't care if he was a veteran, I got rid of him before a formal offer was presented. Hardly any of our veterans speak Spanish anyway."

61. The very same HBPC employees who complained about Ms. Oben's managerial style were actively involved in the selection of the next Director.

62. They were on the resume review board.

63. They were sent voting buttons to express their preferences.

64. They had the ear of the Chief of Staff during meetings.

65. All of these facts stacked the odds against James Berry to be taken seriously as a candidate for the HPBC Director position and he was never even offered an interview.

66. Prior to his working at the Bedford VA, Berry worked at the North Hampton VA where he engaged in EEO activity. That case made its way to a hearing stage at EEOC before Judge Aarika Mack-Brown and was entitled Berry v. VA, EEOC Hearing No. 470-2019-00349X, Agency No. 200H-0631-2018-104424

67. Karen Grogan was the attorney representing the VA in that matter.

68. The Home Telehealth Care Coordinator position was an internal posting in October of 2019; as such there was no formal job announcement for it.

69. Berry submitted notice of his desire to be considered for the position to Lyndsey Prior, Nurse Recruiter.

70. In fact, the VA was looking to hire two Home Telehealth Care Coordinators at this time. They were the same position.

71. At the time the posting went out, Anita Bonna was the Facility Telehealth Coordinator.

72. Bonna was subsequently taken out of the position and Anderson replaced her with Jamie Woolrich on a temporary basis around January 6, 2020.

73. Due to various staffing changes, Anderson was overseeing Woolrich's detail into the Facility Telehealth Coordinator making sure she had the personnel she needed for that service.

74. Prior to her departure, Berry had communications with Bonna in which she indicated she was considering him for the position.

75. Berry was never interviewed.

76. On January 6, 2020 Berry was informed by way of a text message from a colleague that Bonna was no longer in the Telehealth Coordinator role.

77. In that same text message on January 6, 2020 Berry was informed that one of the two Telehealth positions was filled.

78. In early January of 2020 Berry was actively negotiating a settlement of his ongoing EEO/EEOC claims, including the present claim and his prior claim from North Hampton.

79. In early January 2020 Mary Anderson received a call from Attorney Grogan in which she informed Anderson that she was working on a settlement and would, as part of that settlement, Anderson select Berry for the Home Telehealth Care Coordinator position.

80. Anderson reviewed Berry's resume, determined that he had the competency and experience for the Home Telehealth Care Coordinator position and told Grogan that she would direct hire him for the position as part of the settlement.

81. Everything about her review of Berry's qualifications led Anderson to believe Berry would have been a good candidate for the Home Telehealth Care Coordinator position.

82. Anderson understood she was agreeing to select Berry as part of a settlement.

83. On January 30, 2020 Anderson emailed VA Attorney Creston Rice ("Rice") and asked for an update on the Berry settlement negations as she really wanted to fill the Home Telehealth Care Coordinator position.

84. In response Rice forwarded Anderson's email to VA Attorney Karen Grogan who was handling the settlement negotiations with Berry.

85. On February 11, 2020 Anderson emailed both Rice and Grogan asking again for the status of the Berry settlement negotiations. In that email Anderson indicates that if Berry cannot commit to the job within the week they will proceed with interviewing the candidates who applied for the job.

86. On February 11, 2020 Grogan responds to Anderson thanking her for the update and asking about some other aspects of the ongoing settlement discussions related to telework.

87. On February 13, 2020 Grogan informs Anderson that the settlement broke down and that Berry was not taking the settlement which included the Home Telehealth Care Coordinator position.

88. On February 18, 2020 Anderson emails Woolrich and instructs her to begin interviews for the second Home Telehealth Care Coordinator position. She directs Woolrich how to conduct the interviews and offers her assistance.

89. On February 18, 2020 Woolrich emails Anderson and informs her that Berry is one of the applicants for the position. She asks Anderson, "Should we interview him, or no?"

90. On February 18, 2020 Anderson responds to Woolrich and instructs her not to interview him. Berry is taken out of merit consideration for the position by Anderson.

91. On February 18, 2020 Woolrich emails Anderson her revised list of seven candidates for the Home Telehealth Care Coordinator position. Berry was no longer considered a candidate.

92. Berry was never interviewed, nor was he selected, for the Home Telehealth Care Coordinator position.

93. At no time did Berry every communicate or indicate that he was withdrawing his application for merit consideration of the position.

## FIRST CLAIM FOR RELIEF
(RACE/ETHNICITY/REPRISAL DISCRIMINATION – HOSTILE WORK ENVIRONMENT)

94. Plaintiff repeats and re-alleges each and every allegation contained herein.

95. Plaintiff was subjected to a hostile work environment by Defendant based on his race/ethnicity and in reprisal for engaging in protected EEO activity, as stated above.

## SECOND CLAIM FOR RELIEF
(RACE/ETHNICITY/REPRISAL DISCRIMINATION – DISPARATE TREATMENT)

96. Plaintiff repeats and re-alleges each and every allegation contained herein.

97. Plaintiff was subjected to disparate treatment by the Defendant with regard to terms and conditions of his employment, including but not limited to overtime and telework, based on his race/ethnicity and in reprisal for engaging in protected EEO activity, as stated above.

### **THIRD CLAIM FOR RELIEF**
(RACE/ETHNICITY/REPRISAL DISCRIMINATION – NON-SELECTIONS)

98. Plaintiff repeats and re-alleges each and every allegation contained herein.

99. Plaintiff has been discriminated against by the Defendant on the basis of his race, ethnicity and in reprisal for his prior EEO activity in violation of Title VII in that the Defendant has unjustly and repeatedly passed the Plaintiff over for promotion opportunities for which he was best qualified in favor of individuals outside of her protected class.

**WHEREFORE,** the Plaintiff demands the following relief:

a. That this Court enter judgment for the Plaintiff against the Defendant for all compensatory, emotional and psychological damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action in an amount to be determined by a jury;

b. That this Court award the Plaintiff all costs and expenses associated with this lawsuit;

c. That this Court award the Plaintiff all attorney fees associated with this lawsuit;

d. That this Court award the Plaintiff interest on any and all judgments awarded in this lawsuit; and

    e.    For all other relief as this Court deems meet and just.

**The Plaintiff demands a jury trial on all issues triable by a jury.**

    Respectfully Submitted,
The Plaintiff,
James Berry
By his attorney,

*/s/ Marc J. Levy*

Marc J. Levy, Esquire
215 Boston Post Road, Building B Suite 3
Sudbury, MA 01776
Tel: 508-359-8600
Fax: 508-359-8601
Email: marclevy@marclevyesq.com

Dated: 03/09/2022    B.B.O. #644826